THEODORE RUSSELL, complainant, *vs.* ROBINSON TURNER.

*New trial. Practice.*

A new trial will not be granted upon the ground that an erroneous instruction was given, unless it also appear that it might have been prejudicial to the excepting party.

Thus where, in the trial of a complaint for flowage, the parties traced their respective titles to one Dailey, in whose deed to one Fuller, one of the complainant's predecessors in title, the grantor "reserved the liberty for repairing dams and flowing, as much as said Dailey requires for use of the mill;" and the presiding judge instructed the jury that the reservation would not pass to Dailey's grantees; and the controversy between the parties was not whether the defendant could flow to the extent that Dailey did when he delivered the deed containing the reservation, but whether the dam had not since been raised so as to flow more of the complainant's land than would have been flowed by a dam of no greater efficient height than the one in existence when the reservation was made, *Held*, that the instruction was purely immaterial.

ON EXCEPTIONS.

· COMPLAINT FOR FLOWAGE.

BARROWS, J.    This is a complaint for flowage tried before the jury at the January term, 1870; the respondent not denying the complainant's title in the lands or that they were flowed, but asserting by his plea "a right to flow without compensation, also a right to flow acquired by prescription." The verdict being against him, he presents exceptions from which we learn that the parties traced their respective titles to Nezar Dailey, in whose deed of the meadow land, dated August 26, 1809, to Samuel Fuller (under whom, through certain *mesne* conveyances the complainant holds), is found the following clause: "reserving liberty for roads, also for repairing dams, and flowing as much as said Dailey requires for use of the mill."

The respondent owns the mill privilege and pond dam causing the flowage, through a series of conveyances under William H. Brettun, to whom Nezar Dailey conveyed them by deed dated June 20, 1814, couched in the terms following: " Also, the saw

and grist-mill situated upon lot 93, together with the mill-yards, dams, ponds, and pondage, together with all the rights and privileges secured to me by the several deeds of Samuel Atwood and others, or reserved by me in any deeds to Samuel Boothby, or any others ; " " and it is agreed that if the reservation in the deed from Nezar Dailey to Samuel Fuller, gave to Dailey the legal right to convey the same, then the defendant Turner, now enjoys that reservation." The presiding judge, among other things, in respect to the reservation in the deed from Dailey to Samuel Fuller, instructed the jury, that as there were no " words of limitation or inheritance by which that reservation would descend to the grantee of Dailey . . . Dailey's grantee, and the subsequent grantees, acquired no right whatever to flow the lands in question, so that this branch of the defense will be entirely disregarded by you." To this the defendant excepts. Now, if upon looking at the case as presented at *nisi prius* and examining the positions taken by the parties respectively, as to the questions which they were litigating before the jury, it had appeared to be possible that any rights of the respondent could have been injuriously affected by this instruction, it would be necessary to scrutinize it carefully, and determine whether it is absolutely sound and correct. But the exceptions further show that it was " admitted that the pond dam of the defendant is the dam originally supplying the mills referred to in the deed from Nezar Dailey to Samuel Fuller, the complainant claiming that it has been rebuilt several times and raised, and is now higher than when that deed was given.

The whole charge of the presiding judge is made part of the exceptions, and taken in connection with the pleadings, and the statement of the case in the exceptions, makes it plain that the controversy between these parties was not whether this defendant had the right to flow this land to the extent that Nezar Dailey did in 1809, when he made his deed to Fuller, but whether the dam had not been raised since that time so as to flow more of the complainant's land than would have been flowed by a dam of no greater efficient height than the one which was in existence when

Nezar Dailey reserved to himself "liberty . . . for repairing dams and flowing as much as said Dailey requires for the use of the mill."

If the defendant claimed that by the conveyances from Dailey he had acquired a right to flow to any greater extent than would be flowed by a dam of the same height as that which Dailey was using when he sold the meadow-land to Fuller, his claim could not be sustained.

It is apparent that his right to flow so much, however it might have been acquired, was not in dispute. He and his predecessors and grantors had exercised for more than fifty years the right to flow so much, and it was admitted that defendant's dam is the dam originally supplying the mills referred to in the Fuller deed, "the complainant claiming that it has been rebuilt several times and raised, and is now higher than when that deed was given." Manifestly, it was upon proof of this allegation that the complainant based his claim to a verdict, and not upon a denial of the defendant's right to flow to the extent mentioned in the reservation, a right which he and his grantors had enjoyed for more than fifty years, and were entitled to maintain by prescription, whether it had originally been so excepted and reserved by Dailey as to be capable of passing by deed to his grantees or not.

Under these circumstances we do not see how the defendant could have been injured in the least by the instruction of which he complains, if it was erroneous. It was purely immaterial.

There are numerous cases in which it has been held, that, even if instructions are erroneous, unless it appears also that they might have been prejudicial to the excepting party, a new trial will not be granted. *Neal* v. *Paine*, 35 Maine, 158; *Beeman* v. *Lawton*, 37 Maine, 543; *Whidden* v. *Seelye*, 40 Maine, 247; *Barrett* v. *Salisbury Manuf. Co.*, 28 N. H. 438; *Moulton* v. *Witherell*, 52 Maine, 237.

We need not inquire whether the clause in Nezar Dailey's deed to Samuel Fuller would be most correctly described as a reservation or an exception, or whether for want of words of limitation or

inheritance, Nezar Dailey's assigns failed to get a good title, by deed, to the premises, reserved or excepted in his conveyance to Fuller. For more than fifty years, as the case shows, the tenant and his grantors had exercised all the rights which Nezar Dailey can be supposed to have attempted to reserve or except, and defendant's title thus acquired, as the judge instructed the jury, was as good as if he had had a deed of a right to flow from the owner of the land. It is not for " flowing as much as said Dailey requires for use of the mill " that this complaint is instituted or maintained; but because, as the jury seem to have found, within twenty years previous to the commencement of this process the respondent or his predecessor, has by increasing the height of the dam, flowed beyond his right and beyond what Nezar Dailey and his immediate successors had been accustomed to flow.

*Exceptions overruled.*

APPLETON, C. J; CUTTING, KENT, and DANFORTH, JJ., concurred.

*M. T. Ludden,* for the complainant.

*Wm. P. Frye & J. B. Cotton,* for the defendant.